May it please the court, Carlos Garcia on behalf of appellant Jose Cardenas. January of 2013, Mr. Cardenas was in a hotel room while McAllen Police Department conducted an investigation because of an indication that bank withdrawals were made at INB Bank. In fact, a couple of ATMs were drained of all of the cash, which led to the attention of law enforcement. Law enforcement was able to identify appellant's co-defendant, Mr. Carrillo, and a man named Jose Garza who were in a Mercury Mountaineer going from bank to bank and using access devices or clone devices to drain the ATMs or accounts of money. Based on search of the vehicle, they went back to the hotel where Mr. Cardenas was and found him in a room where they also found some computer equipment and amongst the evidence that was found, a flash drive or some flash drives with over nearly 7,200 account numbers. Mr. Garcia, you only have five minutes and we're unfamiliar with the breeze. I'm just trying to help you along here. Why don't you move to your argument? The argument is that the court improperly assessed an 18-level enhancement by multiplying the 7,200 account numbers by $500 to get to the aggregate amount under the sentencing guidelines. We believe that the court erred in giving that 18-level enhancement where the defendant appellant pled guilty to possessing 30 counterfeit devices. We believe that that sentence or that enhancement was unreasonable given the facts of the case and the cases cited by the government, beginning with Hebron, which was cited to the court, as well as John, are cases that are distinguishable from our case. The appellant in our case was not the one who actually accessed that information from any computer system. The cases that are cited relate to people that worked in doctor's offices or worked at banks who were actually the ones who drew that information from computer systems to then pass it down the line. In this case, defendant Cardenas was actually at the bottom of the totem pole, in fact, was found in a room and by this constructive possession of that flash drive or flash drives is then held to account for that amount. But now, doesn't the $500 apply any time an ID is used unlawfully? Correct. And we go back to the question of what use is and the definition of use, and I would ask that I be able to address that with the balance of my time. On the issue of use, I believe that even the court, during the sentencing, agreed with appellant's trial counsel in regards to use and what that actually means. And I'd like to cite the following cases out of the Seventh Circuit, United States v. R.A.B.I.U. 721 F. 3rd 467, which goes in line and cites to another case out of the Eleventh Circuit, United States v. Hall, and they go to the issue of use and possession and near possession and how United States or Bailey v. United States Supreme Court case that dealt with possession of a flash drive. And again, the use of the 70, there's no evidence that any of those 7,200 account numbers were ever used in any mean, by any means. And so we believe that using those 7,200 or nearly 7,200 account numbers and multiplying them by 500 was unreasonable. And I'd also like to cite the court to United States v. Lyles 506 Fed Appendix 440. In light of this, you know, number of 500 to multiply by 500 is without any basis, without any indication of, of, of the account numbers being viable or those numbers having any, any, any amount of money or whether they were accessed or could be accessed. As it relates to... Okay. Your time, your time has expired unless you want to use some of your rebuttal time. No, Your Honor. Okay. You've saved time for rebuttal. Yes, Judge. Appreciate it, Mr. Garza. Thank you. May it please the court, opposing counsel, Rolando Garza, I'm here for Pedro Carrillo-Torres. This case is about access devices, the meaning of their use and who is the victim. What has the Fifth Circuit said about this issue? There's one case cited in the government's brief, Juanese. I believe that's how it's pronounced. Some of these names kind of escaped me. But it's Juanese cited. It's an unpublished opinion from this court cited 542 Fed Appendix 427. And what this gentleman was doing is he was going through people's trash and he had an orange notebook and he would take information from the trash, I guess, regarding their bank accounts and he had a notebook with this information. Relying on that, I believe an enhancement was applied, finding these people were victims because their information was used. This court found that an individual means of identification must actually be used for that individual to count as a victim. This is contrasted with who's charged with possession of counterfeit access devices. There's a difference between possession and use. That's basically what it comes down to. Actually, there's a difference between possession or a transfer or a use. They all have their own unique definitions. And that's what the Hall case is about, United States v. Hall, which I cited in my brief, that there are these differences between those three definitions. So what did the court say in the present case regarding the access devices? Well, the court gets there and they make note about this flash drive that's got these account numbers. It's found in a hotel room. And the court notes, unlawfully obtaining these account numbers, taking them from whatever source. And I learned from another case that you can apparently buy them on some illegal websites or it's illegal to buy them. I don't know if these sites themselves are illegal. But anyway, however you obtain them, because it was never clear how these account numbers were obtained, just that they were present on a flash drive. So she notes, however you've obtained them, when you obtain them and then put them onto a flash drive, it is a chain in the offense that you're committing. You know, you've taken them from whatever source and you know, you put them onto your flash drive. You know, from the flash drive, then they'll be... Counsel, you're running out of time. Let's assume I agree with you that use means use. Okay. These numbers were just on a flash drive and had not been used. And so let's assume further that I agree that it was there for the district court to find that that constituted use. Why wasn't that error harmless? Okay. The court did include some language there saying, okay, well, I think I would have imposed the sentence anyway. Okay. Well, first we review the sentence and we look, was there a procedural error? Significant procedural error, there is. So now I think we should look at the reasonableness of the sentence because what would have happened, she would have calculated, if she would have properly calculated the guideline range, I believe it would have been something like 70 to 87 months. Okay. The way it would have played out without that error, the judge would have then said, okay, I don't think this is enough. I then would have had to have justified a bigger sentence. My argument in my reply brief is that all those concerns she had were already taken into account into the guidelines. They got plus two levels because they had the device, they had the equipment. They got another two levels because of sophisticated means. I guess they were prepared, they had the equipment, they had come over from Mexico, things of that nature. No role adjustment was given. There was no mitigating role adjustment. So a lot of those concerns are already covered by the guidelines. So now what the court has done is done an upward departure that's really not warranted because the guidelines adequately take into account all of the factors. And one of the factors that I know I'm going to run out of time. What do I do with the judge's statement that even if I'm wrong about the guidelines calculation, I'd give this sentence anyway. How do I work around that to get to where I find that the error was harmful? That it's unwarranted departure. That the guidelines adequately take into account all the factors here and this was just unwarranted departure. It could lead to and there's a much broader issue I think also about the $500 per access device. That also takes into account the gravity of the offense. And I've run out of time but I'd like to cover that on rebuttal as well on the issue of harm. Yes, you should have time for rebuttal. Thank you. Thank you. Good morning and may it please the court. Andrew Gould for the United States. The district court's judgment should be affirmed for three reasons. First, the district court properly calculated the number of victims in this case. Unlike the 7th and 11th circuit cases, this is not a case involving the mere possession of identifying information but rather the defendants availing themselves of that information in furtherance of the purpose of their conspiracy thus constituting use of that information. Second, the district court appropriately calculated the amount of intended loss. It was not limited only to those accounts to which unauthorized charges had been incurred but rather each account to which the defendants had access. Third and finally as Judge Graves has pointed out, any error would be harmless in this case given the district court's clear statement that it would impose the same 108-month sentence for the same reasons even assuming error for the reasons previously stated and explaining why. Let's go into the harmless error thing first and I understand that would only be assuming that there was error and you're entitled to argue that but let me follow up on Judge Graves' pertinent questions here. Assuming that the wrong guideline range was identified, the range that was identified had 108 months at the very bottom, isn't that correct? That's correct, Judge. And if that was the sentence that was actually imposed? That's correct. So unless it's just a bizarre coincidence, we would have to conclude, wouldn't we, that the district judge was influenced by an incorrect guideline range? Again, that's assuming that the defendants are correct that there was error in identifying the range. I mean, how could we possibly say that the district judge's statement, I would impose the same sentence, has that much credibility if it's exactly the number of months at the bottom of the incorrect range? Sure. Judge Smith, I think the answer to that is just by looking at this court's precedent and what this court requires in terms of and looking at the harmless error analysis. I'm sure there are numerous cases on which this court has upheld sentences that are at the low end of the guidelines range, maybe at the high end of the guidelines range, because the test is whether the district court stated that even assuming error, it would impose the same sentence for the same reasons. I agree with . . . Well, counsel, I think the test for us is, and I'm going to read it, I think it says the proponent must point to evidence in the record that will convince this court that the district court had a particular sentence in mind and would have imposed it notwithstanding the error. So what I'm going to ask you to do, and you can go ahead and ask Judge Smith's question, but I think it dovetails into that. What's the evidence in the record that the district court would have imposed this sentence without any influence from the guidelines when the sentence as Judge Smith has pointed out, which was imposed, was exactly at the bottom of the guidelines range? Yes, Judge Graves. I think by looking . . . that evidence comes from the district court's statements. The statements of the alternative sentence can be found at ROA 106, and that's where the judge states that it would give the alternative sentence. But before that, the judge states for six pages worth it. This begins at ROA 100. Not just six pages, but he also said he's going to sentence you, each one, within the guideline range at the low end to a term of 108 months. And it just happens that the two choices are either a higher range of 108 to 120, and he says I'm going to sentence you at the low end to a term of 108 months in custody, which is the low end is 108 to 120. Is that correct? Yes, the judge did state that, but the judge also stated at ROA 106 that even a statutory maximum penalty of 120, which would have been 120 months, would be appropriate. Again, the judge stated that at ROA 106. And she stated that for three reasons. First, the manner in which the defendants committed the offense, that is the defendants crossed the border solely to commit the offense, no other reason. Second, the significant amount of harm that they caused in the brief amount of time to which they were executing their conspiracy, over $450,000 worth of actual loss. And third, the sheer... She entered findings and expressed her views that the 70 to 87 range would be otherwise inappropriate and that she would go above that. Yes, Judge. And she would move to the low end of the next range, which happens to be the range that would have been in effect, but for this error, if it's error. Yes, Judge Higginbotham. I would say that the district court was saying, although she might not have explicitly stated this, by going through the facts of the case in the detail to which she did, she was indicating that a sentence below that would be inappropriate under the 3553A factors. The third fact, which I didn't get to, was the sheer thousands of accounts, which they had access to on the flash drive, over $7,200. I'm going to sentence you within the guideline. Right. The low end to a term of 108 months. Correct. That tells me that she's operating within the 108 guideline level, and she's not starting from the lower end and simply saying that's inappropriate and I'm going to exceed the guideline here. She said, I'm sentencing you at the low end of the guideline. But, Judge Higginbotham, that was after she found that the enhancements would apply. So she was saying, we would submit that she was saying, here's what the guidelines range is, and the guidelines range in this case, finding that both contested enhancements apply, would be the 108 month at the low end. And so finding that that range applied, she was saying, I'm sentencing you at the low end. But then again, we would just look to her words, and what she said, even assuming error, I would still sentence you to this amount for the reasons previously stated, going back again to ROA 100, and then summarizing those reasons again. So yes, although perhaps it could be, I think Judge Smith used the word bizarre, perhaps it could be bizarre that this was a sentence that she had in mind. But I think given the careful consideration that the judge gave to this case, and she did say that. She said that this was an unusual case compared to other border crimes she had seen. She had considered this case more closely and all of the objections. She also had, she also knew what. I don't think she bothered me about that. All that makes perfect sense, except that all she needed to, what she should have said directly was that I'm going to depart. She doesn't say I'm going to depart. She says I'm going to apply a guideline. I suppose that's true, but I would. I suppose that's what she said. Yes, Judge Higginbotham, but we would argue that perhaps just that by not stating that I'm going to depart, that's not dispositive. What's dispositive is instead what she said and what she meant. And going into all the details and stating clearly why she would. I don't know how to determine what she meant other than by what she said. Do you? I'm sorry, I didn't. How do we determine what she meant other than by what she said? I mean, it may be, in fairness to the district judge, that that's true, but when a district judge starts talking, and you only know that as a district judge, that's going in the record, and that's what the appellate court's going to be reading, and that's what they're going to go by. And that's why a lot of judges don't talk. They just sentence. But in this case, again, the district judge recognized that even assuming that there was guidelines error, she would still find this sentence appropriate. But counsel, separate and apart from her declaration that I would do this anyway, all we're talking about in the record is the thing she mentioned before she imposed the sentence. Is that right? Well, also, after she states that I would . . . after she . . . excuse me. So what she says is, even assuming error, I would impose the same sentence for the reasons previously stated, and then she summarizes those reasons thereafter. This isn't a case in which the judge simply said, even if I'm wrong, I'm going to give you the same sentence, and the defendant is remanded to the custody. Well, let me ask you, your burden is to show that the sentence imposed was not influenced in any way by an erroneous guidelines calculation. Fair? Yes, that's correct. And so you argue that from all this uncertainty about her language, you've carried your burden. We would argue that we have carried our burden based on what the district judge said. All right. Why don't we . . . let's move to the loss calculation. I believe your argument, as I understand it, correct me if I'm wrong, is that for the $500 minimum to apply, use is not required? That's correct. Could you go ahead and address that issue? Yes, Judge Smith. And that actually comes from the language of the guidelines itself. There's a difference between use, which is used in the number of victims enhancement, and the intended loss. And here, the note 3F1 says, loss includes any unauthorized charges made with the counterfeit access device. And Mr. Cardenas argues that he clings to that language, unauthorized charges made, and says that, well, only those accounts which had unauthorized charges made can be counted. But that misreads the guidelines and this court's case law. It misreads the guidelines because it says loss includes. It doesn't say loss means. It says loss includes. And that's different from, for instance, victim means. So it's not limited to that. And then you have a note 3A2, which is the more broad definition of intended loss. Intended loss subsection 2 includes intended pecuniary harm that would have been impossible or unlikely to occur. And then they give the example of a government sting operation. There's a broad definition of intended loss, and that's confirmed by this court's case law, specifically in John and Harris, both 2010 cases, in which there, this court affirmed intended loss calculations not based on the number of accounts which the defendants made unauthorized charges, but rather that they had sufficient access to, that by virtue of their access, that was enough. John talks about the defendant's ability to access funds, and Harris discusses the potential victim risk alone. So there is a difference between use as it pertains to number of victims and intended loss, unauthorized charges made. We would argue, in fact, that the district court could have, in fact, calculated the loss by looking to the credit limit of each of the accounts, in which presumably it would have been a much higher loss than the over $2.5 million. Instead, they applied the minimum. There was no error. I mean, the argument, your argument sort of makes sense to me in that intended loss means something that's potential but not something that actually occurred. It was the loss that was intended at the time the crime was committed. Yes, Judge Smith. So not requiring the actual use makes sense. It's not counterintuitive, is it? That's correct. And, in fact, I think it would almost eviscerate in the fraudulent credit card context the in that case we would only be looking to what actual losses were incurred. If I may move with the remainder of the time to the number of victims enhancement. And we all agree that this issue turns on the phrase was used in note 4E2. This case is distinguishable from Hall, the 11th Circuit case, and Raybill. This is not a mere transfer or possession case. Which, by the way, this court has not held in a published opinion. They have not, excuse me, this court has not agreed in a published opinion with Hall and Raybill. Onanisi, if I'm pronouncing that correctly, an unpublished case does appear to make the distinction between possession and use. But at least in terms of published cases, this was an issue of first impression. Even assuming mere possession is. As far as I understand it, is that although it's not necessary that a particular individual, in order to be a victim, have to have his particular account debited. That if, but if his card's in the possession of someone who had run a scheme to do that, that that's enough. That it's being used unlawfully in a scheme. Although they didn't get to his card yet. That's part of it, Judge Higginbotham. I would say that it's also based on the specific fact, there are more facts in this case that take this beyond mere possession. Specifically, the flash drives that were attributed to the defendants that had organized onto them this over 7,200 legitimate bank accounts. These flash drives were located right next to the counter, all of the counterfeiting equipment necessary. They were ready for uploading at any time. And in fact, they. You're saying they were used to initiate an unauthorized transaction? Well, we are saying, so going back actually, in fact, to the Bailey language, the language from Bailey versus United States, which is the analytical underpinnings of Hall and Rebu. They availed themselves of that information. They employed that information toward the purpose of their conspiracy. They didn't use the information in the technical sense of using, you know, to run an unauthorized charge, but they did avail themselves of that information when they had the flash drives, when they had the counterfeiting equipment, when they crossed the border, when they engaged in their conspiracy. All of these facts, these are not mere preparatory actions. These go beyond that. And so that distinguishes this case. I was a victim. It was a matter of common sense for these people, that identity, that card actually used. It was possessed, and they intended to use it, and I agree with you on the intent is good enough when you calculate the amounts involved, but now you're switching to a very different inquiry, and that's identifying victims. Sure. Last week, I got a call from my credit card company telling me that they were going to issue me a new credit card because my account had been compromised. They went through the charges on my account. There had been no unauthorized charges. Nonetheless, they canceled my credit card and told me they were going to send me a new one. I bring this up to point out that you can still be a victim of identity theft even— There was a loss there. They just covered it for you. Come again? You were a victim because your card was used, unauthorized use. No. In my case, actually, there was no unauthorized charges on my account. So my point is that by having the account information, right, by having the account information, that made me a victim. But again, in this case, a lot is far different from that based on the defendant's actions. Here, we're not—this isn't focusing on what was done with the victims or the account holders, but rather what the defendants did and how they employed that information. And again, with the flash drive, this was a substantial step towards their conspiracy. This wasn't simply, such as in Hall, texting information to a third party who then would create the— Worked on the use in the sense that it was part of a scheme. They were drawing down some of those names, but she counted as a victim those that had not—names not been drawn down because they were just in a scheme. I mean, they were on the flash drive, and they were using them as fast as they could, but they didn't get to those people. That's correct. They did not get to those people. I mean, whether that's right or wrong, that's where she put it. So, beginning—the statement started, I believe, ROA 85, and that colloquy goes for the next four pages. And there, the district judge talks about what it means by virtue of the—the judge focused on the flash drives and what—where the defendants were in terms of their conspiracy and what they had on the flash drive. That is, they had all the account information. They had the counterfeiting equipment. We agree that they had not yet gotten to these victims. It's not simply unlawful. That may be unlawful possession. It doubtlessly was. It was stolen. But how are they—I don't know, how do you get—used without—you're doing more than just have a flash drive in your hand. That's possession. Because, again, just simply based on the facts that they—like I said, just going back to the Bailey language— Do you have a case that says that? I'm sorry, a case that— Is there a case for that proposition? There is no case. There is no case on this—on the use. We concede that the Seventh, Eighth, and Eleventh Circuits all have held that mere possession is not enough. We're just saying the facts of our case are significantly different. Excuse me? So your facts are different? Yes. Yes, they are, significantly. So it's possession just to have them on the flash—the possession on the flash drive is different from possession in some other mechanism? It's that, as well as all the counterfeiting equipment and where they were in terms of their conspiracy at that point. Thank you. Thank you, Mr. Gould. Mr. Garcia, you've saved some time. Thank you, Your Honor. I'll try to be brief, Your Honor, but getting back to the issue of what the defendants actually did specifically for Mr. Cárdenas and what he actually did, and looking at the language from the PSR, he was affixing codes or PIN numbers after Mr. Garza was scanning or re-embossing the fraudulent cards. That's what he actually did. And as it relates—there's no evidence at what point Mr. Cárdenas became part of this actually downloaded the information, where it became—even under the relevant conduct statutes of cases, when someone becomes part of a conspiracy, they don't or shouldn't be held to account for everything that came before it. At what point in time—I'm sorry? Well, from our position, Your Honor, again, if—I mean, getting into or starting to work with a drug cartel, is a drug dealer there responsible for the tons of drugs that were brought in before or at the time that the defendant joined the conspiracy? That's our argument. Also, I'd ask the Court to consider the question of how we punish peer-to-peer sharing of music or copying of music. Because someone had access to a computer system or someone else's server that had maybe 500,000 songs, or is it the ones that they actually downloaded? That's the analogous, I believe, to the flash drive that was found in this case. We don't punish people for what they didn't actually do. I frankly don't get the argument about why attribution of liability is the point. I'm assuming that there has been appropriate attribution of responsibility for whatever that may be. The question is, what is it? And the question is, is it simple possession, or has there been a use? And attribution doesn't matter. Well, I think going back to the Hall case— Unless you're just trying to get away from that and say, well, we weren't a participant, so we weren't liable for whether it was use or possession. Well, and trying to stick more focused on the case, Your Honor, as it relates to Hall and identifying of victims. That possession was not enough in dealing with—only if the identifying information was actively employed for that purpose. And if that identifying information had not been, then they shouldn't be held for those 7,200 account numbers that were on the flash drives. Thank you. Thank you, Mr. Garcia. Mr. Garza, you've saved time for rebuttal. At a trial court level, when the government was pressed for a number of victims, they said 26. That's my recollection. They had 26 who suffered an actual loss that they had been able to identify. Now, the trial court renders sentence on the belief that there's over 7,000 victims. So she was influenced by the guidelines. She was influenced by this gross misinterpretation of the guidelines. So I would like to add that to my argument. Also, again, my argument is also that what has occurred in this case is an unrewarded  and also especially as to the $500 fictional amount as to each one of those access devices. That raised the guideline levels an extra four levels. So my argument is twofold as to harm is that the trial court was influenced and what occurred amounted to an unwarranted upward departure. On the issue of use and haul, I believe the lady went as far as she was getting information, personal information. She was actually selling that information and that was not considered use. That was considered a transfer. So even that's not sufficient. A use, you've got to take your account information or whatever it is and actually use it what it's intended to do. Going through the cases, you'll see someone who has gotten some information. They'll call the bank. Okay, this is my account number. This is my name. You know, and then from there, they will get some other type of information and they're actually using the information. Or they use the name, the account number and they procure a credit card, but they're actually using that information in a way that it's going to further the scheme and is actually advancing. And my argument is that's not what occurred here. They were in simple possession of those access devices. They had the account numbers. It would be the equivalent of Onisi. I believe all those names that were in the orange notepad, flash drive is just a storage device. It's just a modern day notepad. That's all it was. All right. Thank you, Mr. Garza. Thank you. Case is under submission. The trial case for today is recognized.